IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

Carla DeYoung, Tammy Jo Williams )
Darlene Currie, Carlos Alvarez )
)
Plaintiffs, )
)
vs. )
)
) Civil No. TBD
Greater Baton Rouge Association of Realtors, Inc., )
New Orleans Metropolitan Association of Realtors, Inc. )
Bayou Board of Realtors, Inc., )
Greater Central Louisiana Realtors Association, Inc., )
Realtor Association of Acadiana, )
Louisiana Realtors Association, )
ROAM MLS, LLC, )
National Association of Realtors, )
Kenneth Daman )

Defendants.

## COMPLAINT

### INTRODUCTION

1. This civil action seeks damages and injunctive relief for violations of federal and Louisiana state laws, including the Sherman Antitrust Act (15 U.S.C. §§ 1-2), Clayton Act (§ 3, 15 U.S.C. § 14), Federal Trade Commission Act, Louisiana antitrust law (La. R.S. § 51:122), plaintiffs' First Amendment right to freedom of association under the United States Constitution and other related statutes.

2. Plaintiff alleges that the Defendants have engaged in anticompetitive practices, including unlawful tying arrangements that compel membership in REALTOR organizations as a condition for accessing MLS (Multiple Listing Service) data. Such practices limit competition, harm consumers, and disproportionately affect all real estate professionals within the real estate industry.

3. **Lead Plaintiff**

4. (Carla DeYoung), is designated to act on behalf of all plaintiffs in This matter. All service of process and court documents should be directed to Lead Plaintiff at:

Carla DeYoung
31185 Walker Rd North
Walker, La. 70785
225-320-3004 ext 0
TigerLandProperties@gmail.com

1

**JURISDICTION AND VENUE**

5. This Court has jurisdiction under 28 U.S.C. § 1331, as the claims arise under federal law, including the Sherman Antitrust Act and the Clayton Act. The Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this district under 28 U.S.C. § 1391 because the events giving rise to this complaint occurred within this district, and Defendants conduct substantial business in Louisiana.

**PARTIES**

6. **Plaintiffs**
    - Carla DeYoung, is a resident of Walker, La., residing at 31185 Walker Rd North, Walker, La 70785. Plaintiff operates as a licensed real estate broker through Tigerland Properties, LLC and Certified Residential Appraiser in Louisiana through The Appraisal Company, LLC.
    - Tammy Jo Williams is a resident of Walker, Louisiana, residing at 30792 Walker Rd North, Walker, LA 70785. Plaintiff operates as a licensed real estate agent under Tigerland Properties, LLC.
    - Darlene Currie is a resident of Brusly, Louisiana, residing at 3431 Allene St., Brusly, Louisiana 70719. Plaintiff operates as a licensed real estte agent under Tigerland Properties, LLC.
    - Carlos Alvarez is a resident of Prairieville, Louisiana, with hjs principal office at 10202 Perkins Rowe, Ste E-160, Baton Rouge, Louisiana 70810. Plaintiff operates as a real estate broker operating through Supreme, LLC and multiple other brokerage companies.
    - Carla DeYoung is a Louisiana State Certified Residential appraiser earning income as an appraiser of real property.
    - All of the Plaintiffs earn their living based upon the marketing and sale of real property and the commissions derived therefrom.

All plaintiffs are required to pay dues and be members of three associations in order to be members of the MLS that services their market area. Market area MLS Services are essential to successfully compete in the Real Estate Industry.

**Defendants:**

- Defendant, Greater Baton Rouge Association of Realtors, Inc. (GBRAR), with its principal office located at 14101 Perkins Rd., Baton Rouge, La. 70810
- Defendant, New Orleans Metropolitan Association of Realtors, Inc., with its principal office located at 3645 N I-10 Service Rd., Metairie, La 70002
- Defendant, Bayou Board of Realtors, Inc., with its principal office located at 4651 West Park Ave, Houma, La 70364
- Defendant, Greater Central Louisiana Realtors Association, Inc., with its principal office located at 4200 Jackson St, Alexandria, La 71303
- Defendant, Realtor Association of Acadiana., with its principal office located at 234 Rue Beauregard, Lafayette, La 70508
- Defendant, Louisiana Realtors Association. (LRA), with its principal office located at 821 Main St, Baton Rouge, La 70802
- Defendant, ROAM MLS, LLC, a consortium of the above Board Associations. with its principal office located at 14101 Perkins Rd., Baton Rouge, La. 70810
- Defendant, Kenneth Daman, the registered agent for ROAM MLS, LLC and Executive Vice President of Greater Baton Rouge Association of Realtors, Inc. with his principal office located at 14101 Perkins Rd., Baton Rouge, La. 70810
- Defendant, National Association of Realtors (NAR), is a national trade association for real estate professionals with its principal office located at 500 New Jersey Ave NW, Washington, DC 20001.

**FACTUAL ALLEGATIONS COMMON TO ALL OR MULTIPLE COUNTS AGAINST ALL DEFENDANTS**

7. Some plaintiffs are current members of ROAM MLS, while others canceled their memberships due to concerns regarding potential violations of the law. ROAM MLS, is serviced by a third-party platform, Paragon MLS. The Board associations require individuals to maintain membership with NAR, LRA, and a REALTOR board within the state of Louisiana to qualify for membership in the MLS that serves the plaintiffs market area. Board association control the data provided to Paragon MLS.

8. The defendants impose tying requirements on appraisers, despite there being no legitimate reason for appraisers to be members of these associations to access the MLS data needed to accurately serve the lending industry and protect consumers.

9. The defendants employ tying arrangements and extract intellectual property (data) from their members, syndicating this data while simultaneously asserting copyright ownership over it. This practice allows them to effectively claim control over the proprietary information of their members.

10. Similar tying arrangements as well as First Amendment cases have been successfully challenged under antitrust laws, including in:

- United States v. Realty Multi-List, Inc., 629 F.2d 1351 (5th Cir. 1980), where the court recognized that such practices could unlawfully restrain trade.

- *Janus v. AFSCME* (2018): The Supreme Court ruled that public employees cannot be forced to pay union dues or fees as a condition of employment if they disagree with the union's positions.

- In Hecht v. Pro-Football, Inc., 570 F.2d 982 (D.C. Cir. 1977), the court addressed the essential facilities doctrine, highlighting the principle that entities controlling essential facilities must provide reasonable access to competitors.

- The "Thompson broker" concept originates from the 1991 case *Thompson v. Dekalb County Board of REALTORS®*, where the 11th U.S. Circuit Court of Appeals ruled that restricting Multiple Listing Service (MLS) access exclusively to REALTOR® association members was detrimental to non-member real estate brokers.

- Jefferson Parish Hospital District No. 2 v. Hyde, 466 U.S. 2 (1984)

11. The widely publicized scandals surrounding the NAR—including sexual harassment allegations, extravagant spending, and antitrust violations related to the Participation Rule and Clear Cooperation Policy—have irreparably harmed the reputation of the entire real estate industry. The public's inability to differentiate between Realtors and non-Realtors ensures that this damage extends to all real estate professionals.

**PLAINTIFF'S ALLEGATIONS**

12. The MLS (Multiple Listing Service) is a critical facility in the real estate industry, serving as a centralized platform essential for real estate professionals. Without access to the MLS that serves the specific market area needed, real estate professionals face significant disadvantages in competing effectively. The data provided by the market area MLS is unparalleled and unavailable on any other platform that could offer comparable competitive opportunities, particularly in time-sensitive scenarios in both buyer's and seller's markets. Communication, transparency and market data is essential between all licensed Real Estate Agents regardless of association membership.

13. The defendants impose restrictions on data usage, creating significant barriers to conducting market analysis—an essential tool for real estate professionals. These restrictions hinder real estate professionals who are denied MLS access due to their non-member status in the defendants' associations from competing effectively. Three key elements of the definition of market value—Reasonable Knowledge, Fair Market Conditions, and Open Market—are crucial for accurately informing consumers about property values. Without access to the market area MLS, agents cannot effectively analyze and disseminate this essential information to buyers and sellers.

- **Reasonable Knowledge**: Both the buyer and seller are assumed to have access to relevant information about the property and the market.

- **Fair Market Conditions**: The property must be sold in a competitive, open market.

- **Open Market**: The value is determined in a competitive and unrestricted marketplace.

14. The defendants require membership in three REALTOR associations as a condition for accessing the MLS. These associations impose rules that the plaintiffs do not support, which constitute restraints of trade and violate the plaintiffs' First Amendment right to freedom of association under the United States Constitution.

15. **Equitable Access**: Defendants engaged in unfair methods of competition and employed deceptive practices, violating provisions of the Federal Trade Commission Act. By excluding non-association real estate professionals from cooperating through the MLS system with association members, they have created an environment that favors certain real estate professionals over others. This exclusion undermines the principle that all real estate professionals are independent contractors and limits opportunities for collaboration and has directly contributed to reputational harm for non-member real estate professionals. As a result, the market is hindered, leading to fewer options for consumers and negatively affecting overall market dynamics. Ensuring that all professionals, regardless of association affiliation, have access to critical data mitigates inequalities in the market.
16. Without these elements being readily accessible, agents are significantly hampered in their ability to effectively guide consumers in understanding true market value
17. This highlights the significance of data access in the real estate market
18. The plaintiffs assert that the defendants' practices disproportionately impact minority consumers and real estate professionals by limiting access to essential data and hindering equitable competition in the market
    1. Portion of article from ftc.gov website regarding the importance of local MLS and real estate professionals.

        MLSs are so important to the operation of real estate markets that, as a practical matter, any broker who wishes to compete effectively in a market must participate in the local MLS.[54] As previously noted, brokers using the MLS reduce the costs of matching buyers and sellers and can market their service to a large set of potential clients. Further, by stating up-front the compensation being offered to a cooperating broker, the MLS can reduce the costs associated with listing brokers having to negotiate separately with each potential cooperating broker.[55] As a result, the use of an MLS can substantially reduce transaction costs.[56]

        https://www.ftc.gov/sites/default/files/documents/reports/competition-real-estate-brokerage-industry-report-federal-trade-commission-and-u.s.department-justice/v050015.pdf

19. The NAR's history of antitrust violations, as evidenced by the 2020 DOJ settlement, the current investigation into the Clear Cooperation Policy, and numerous pending lawsuits, harms real estate professionals. We strongly oppose mandatory membership in an organization with such a record of anti-competitive behavior.

20. Furthermore, the DOJ's recent Statements of Interest regarding buyer-broker agreements have re-emphasized the plaintiffs' concerns over the NAR's rules that mandate these agreements for its members. These rules expose additional anti-competitive practices that harm consumers and stifle market innovation, compelling real estate professionals to operate within a system that prioritizes institutional control over competition and consumer choice. Moreover, these practices further underscore the plaintiffs concerns of being forced as a member of the association to potentially violate fair housing laws by limiting consumer options and creating barriers to equitable access in the housing market

21. We respectfully urge the Court to recognize that multiple listing services (MLS), including those operated by local board associations and those governed by rules that mirror the National Association of Realtors (NAR) policies, should operate independently of such frameworks that may perpetuate antitrust violations. Ensuring fair and lawful practices in the real estate market requires addressing these concerns to protect both industry professionals and the public.

22. Recent rule changes by the NAR, such as limitations on buyer agent compensation transparency and the enforcement of exclusive buyer agreements, further disadvantage real estate professionals and consumers. These changes echo prior opinions regarding broker compensation, which highlighted concerns over a lack of transparency in compensation structures. By limiting visibility into how buyer agents are compensated, these rules undermine trust and hinder informed decision-making for both agents and consumers. The plaintiffs further claim that the defendants' rules and practices establish unfair barriers to market entry, violating the Fair Housing Act by disproportionately impacting minority communities through restrictive policies.

23. **FAIR HOUSING VIOLATIONS:**

    Plaintiffs assert that the Defendants' association rules and policies, enforced through tying arrangements, violate fair housing laws and create discriminatory impacts on consumers. Furthermore, Plaintiffs contend that requiring real estate professionals to enforce these rules as a condition of MLS membership improperly shifts regulatory burdens onto them, which is both inappropriate and unjust -  Specifically:

    a. **Disproportionate Impact on Minority Consumers:** Imposing burdensome requirements that effectively discriminate against protected classes under the Fair Housing Act.

    b. **Barriers to Fair Business Practices:** Restricting competition and limiting opportunities for licensed real estate professionals operating in compliance with fair housing laws.

    c. **Violations in Advertising:** Implementing policies that result in noncompliance with fair housing requirements for real estate advertising.

24. As a result, Plaintiffs have suffered harm, including lost business opportunities, reputational damage, emotional stress and financial losses.

25. The Defendant, NAR, engaged in conduct that was extreme and outrageous by entering into a settlement agreement in the *Sitzer Burnett Class Action Suit* that significantly impacts all members without seeking or considering their input. This conduct disregards the interests and well-being of its members.

26. The settlement agreement included provisions that impose enforced mandatory regulations and fail to address members' concerns or grievances. Such actions have demonstrated a blatant disregard for the rights and emotional well-being of the members, leading to significant distress

27. As a direct result of the Defendant's conduct, Plaintiffs have experienced severe emotional distress, including anxiety, frustration, and a sense of betrayal due to the lack of transparency and the unilateral decisions made by NAR. The adverse effects of these actions extend beyond financial implications, causing psychological and emotional harm.

28. The Defendant's actions constitute a breach of trust, causing widespread reputational harm and member dissatisfaction. This is further exacerbated by the fact that access to essential MLS tools, necessary for effectively serving clients, is contingent upon maintaining the defendants association memberships. Real estate agents who choose not to be controlled by association overreach suffer adverse consequences due to the loss of MLS access, significantly hindering their ability to compete effectively in the marketplace.

29. Defendant (Louisiana Realtor Association) utilized its lobbying power to implement laws in the state of Louisiana that directly stemmed from the National Association of Realtors (NAR) settlement. These changes resulting from the NAR settlement have had a significant impact on all real estate professionals, as they reflect the broader implications of the settlement and the policies adopted at the national level. Consequently, these legislative measures have altered the operational landscape for real estate agents in Louisiana, affecting their practices and potentially their reputations within the industry.

### Count I: Violation of Clayton Act (§ 3, 15 U.S.C. § 14)

30. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

31. Defendants' tying arrangements substantially lessen competition and create monopolistic dominance.

### Count II: Breach of Contract

32. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

33. The defendants breached contractual terms and violated the implied covenant of good faith and fair dealing by imposing excessive fees and enforcing mandatory membership rules, which the plaintiffs argue infringe upon fair housing and antitrust laws.

### Count III: Violation of Federal Trade Commission Act

34. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

35. Defendants engaged in unfair methods of competition and employed deceptive practices, violating provisions of the Federal Trade Commission Act..

### Count IV: Unjust Enrichment

36. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

37. Defendants have unjustly benefited by collecting fees that are tied to restrictive and anti-competitive policies, to the detriment of the plaintiffs and others.

### COUNT V: Emotional Distress

38. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above

39. Defendants have caused emotional harm as a direct result of the actions taken by the National Association of Realtors (NAR).

**COUNT VI: Reputational Harm**

40. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above

41. Defendants caused reputational damage due to its policies as a result of their settlement in the Sitzer/Burnett case, leading to widespread negative perceptions of real estate professionals.

**COUNT VII: Violation of Fair Housing Act**

42. Plaintiffs re-allege and incorporate by reference herein all of the allegations contained above.

43. Defendants' rules and policies, required as a condition of MLS access, have discriminatory impacts that plaintiffs consider to violate the Fair Housing Act. These practices undermine efforts to ensure equal housing opportunities and exacerbate existing disparities in the real estate industry."

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1. **MLS Data Access**: Order Defendants to cease leveraging control over MLS data to enforce anticompetitive tying arrangements.
2. **Declaratory Judgment**: Declare that Defendants' policies and practices violate federal and state antitrust laws, including the Sherman Antitrust Act, and constitute unlawful restraints of trade.
3. **Permanent Injunction**: Issue a permanent injunction prohibiting Defendants from enforcing mandatory association memberships and tying arrangements as conditions for accessing the MLS.
4. **Damages for Emotional Distress**: Plaintiffs request damages for emotional distress caused by the Defendant's conduct. This includes compensation for:
    - Anxiety, stress, and emotional turmoil arising from the reputational harm to the plaintiffs profession and the uncertainty caused by the changed rules for MLS members as a result of the NAR Sitzer/Burnett settlement
    5. **Treble Damages**: Award treble damages, as provided under Section 4 of the Clayton Act, in an amount not less than $10,000,000, for the harm caused by Defendants' antitrust violations.

5. **Treble Damages**: Award treble damages, as provided under Section 4 of the Clayton Act, in an amount not less than $10,000,000, for the harm caused by Defendants' antitrust violations.
6. **Restitution**: Order restitution for any fees or payments unlawfully obtained from Plaintiffs as a result of Defendants' conduct.
7. **Attorney's Fees, Legal fees, and Costs**: Award reasonable attorney's fees and litigation costs, as permitted by law under applicable statutes.
8. **Nondiscriminatory MLS Access**: Issue an injunction requiring Defendants to provide fair and nondiscriminatory access to the MLS for all real estate professionals, independent of association membership.
9. **Additional Relief**: Grant such other and further relief as the Court deems just and proper.
10. **Interest**: Award pre- and post-judgment interest as permitted by law.

Plaintiff respectfully requests this Court to hold Defendants accountable for their actions and ensure compliance with applicable laws to protect fair competition and equitable access in the real estate industry.

**JURY TRIAL DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted:

Carla DeYoung

Darlene Currie

Tammy Jo Williams

Carlos Alvarez

**CERTIFICATE OF SERVICE**

I hereby certify that on _____ 1-2-2025 _____, ~~2024~~, a true and correct copy of this Complaint was served on all counsel of record for the Defendants via _____ SERVED _____.

**Respectfully submitted,**

**Pro Se Plaintiffs:**

**Carla DeYoung**
Signature: *Carla hll*
Date: 1-2-2025

**Darlene Currie**
Signature: *Darlene Currie*
Date: 1-2-2025

**Tammy Jo Williams**
Signature: *Tammy Jo Williams*
Date: 1-2-2025

**Carlos Alvarez**
Signature: *[signature]*
Date: 1-2-2025