## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CARLA DEYOUNG, TAMMY JO WILLIAMS, DARLENE CURRIE, CARLOS ALVAREZ, | Case No. 3:25-cv-00001-SDD-EWD |
| Plaintiffs, | |
| v. | |
| GREATER BATON ROUGE ASSOCIATION OF REALTORS, INC., NEW ORLEANS METROPOLITAN ASSOCIATION OF REALTORS, INC., BAYOU BOARD OF REALTORS, INC., GREATER CENTRAL LOUISIANA REALTORS ASSOCIATION, INC., REALTOR ASSOCIATION OF ACADIANA, LOUISIANA REALTORS, ROAM MLS, LLC, NATIONAL ASSOCIATION OF REALTORS, KENNETH DAMANN, | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM** |
| Defendants. | |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.    ARGUMENT...................................................................................................... 1

    A.    Plaintiffs' Opposition Fails to Justify Their Deficient Antitrust Claims........................ 1

        1.    Plaintiffs' Opposition Does Not Salvage Their Deficient Tying Claim ................ 1

        2.    Plaintiffs' Opposition Confirms That the SAC Fails to Plead the Fundamental Elements of a Claim Under Section 1 of the Sherman Act.................................... 2

        3.    Plaintiffs' Opposition Cites Only Superseded Authority to Support Their Deficient Louisiana Monopolies Act Claim ........................................................... 5

    B.    Plaintiffs' Opposition Fails to Save Their Deficient Fair Housing Act Claim ............. 6

    C.    Plaintiffs' Opposition Fails to Aid Their Deficient Breach-of-Contract Claim............ 8

    D.    Plaintiffs' Opposition Fails to Support Their Deficient Unjust-Enrichment Claim....... 8

    E.    Plaintiffs' Opposition Fails to Bolster Their Deficient Civil-Conspiracy Claim........... 9

    F.    Plaintiffs' Opposition Confirms the Absence of Any Basis for Individual Liability Against Mr. Damann ...................................................................................... 10

    G.    Plaintiffs' Opposition Fails to Provide Any Basis for Giving Plaintiffs a Fourth Bite at the Apple .................................................................................................. 10

III.    CONCLUSION................................................................................................... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Apani Sw., Inc. v. Coca Cola Enters.*,
　300 F.3d 620 (5th Cir. 2002) ...................................................................................................4

*Brown & Root Industrial Services, LLC v. Brown*,
　No. 21-cv-291, 2024 U.S. Dist. LEXIS 195766 (M.D. La. Oct. 28, 2024) ..............................9

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
　429 U.S. 477 (1977).................................................................................................................3

*Davis v. Hanna Holdings, Inc.*,
　787 F. Supp. 3d 42 (E.D. Pa. 2025) .......................................................................................4

*Entergy Gulf States La., L.L.C. v. La. Generating, L.L.C.*,
　No. 14-cv-385, 2020 U.S. Dist. LEXIS 33644 (M.D. La. Feb. 27, 2020).................................8

*Felder's Collision Parts, Inc. v. All Star Advert. Agency, Inc.*,
　777 F.3d 756 (5th Cir. 2015) ...................................................................................................6

*Garber v. Badon & Ranier*,
　981 So. 2d 92 (La. Ct. App. 2008).........................................................................................8

*In re Pool Products Distribution Market Antitrust Litigation*,
　940 F. Supp. 2d 367 (E.D. La. 2013)......................................................................................4

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
　466 U.S. 2 (1984)..................................................................................................................1, 2

*JMCB, LLC v. Bd. of Com. & Indus.*,
　336 F. Supp. 3d 620 (M.D. La. 2018)....................................................................................2, 8

*La. Power & Light Co. v. United Gas Pipe Line Co.*,
　493 So. 2d 1149 (La. 1986) ....................................................................................................6

*Matthews v. BancorpSouth Bank*,
　No. 09-cv-910, 2010 U.S. Dist. LEXIS 17717 (M.D. La. Jan. 25, 2010) ..............................10

*MVConnect, LLC v. Recovery Database Network, Inc.*,
　No. 10-cv-1948, 2011 U.S. Dist. LEXIS 161409 (N.D. Tex. May 27, 2011) ........................10

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
　883 F.3d 32 (2d Cir. 2018)......................................................................................................5

*Pacific Steel Group v. Commercial Metals Co.*,
    600 F. Supp. 3d 1056 (N.D. Cal. 2022) ...................................................................3, 4

*PCI Int'l Consultants, Inc. v. Flavor & Food Ingredients, Inc.*,
    No. 11-cv-0762, 2011 U.S. Dist. LEXIS 117224 (W.D. La. Sept. 16, 2011) ...........................6

*Pope v. Miss. Real Est. Comm'n*,
    872 F.2d 127 (5th Cir. 1989) ...................................................................1, 2

*RX Sols., Inc. v. Caremark, L.L.C.*,
    164 F.4th 436 (5th Cir. 2026) ...................................................................4

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
    833 F.3d 512 (5th Cir. 2016) ...................................................................9

*Sol v. City of Dallas*,
    No. 23-cv-606, 2024 U.S. Dist. LEXIS 32719 (N.D. Tex. Feb. 26, 2024) ...........................2, 7

*Thompson v. Metropolitan Multi-List, Inc.*,
    934 F.2d 1566 (11th Cir. 1991) ...................................................................1, 2

*Trafficante v. Metropolitan Life Insurance Co.*,
    409 U.S. 205 (1972)...................................................................6, 7

*United States v. Realty Multi-List, Inc.*,
    629 F.2d 1351 (5th Cir. 1980) ...................................................................1, 2

*United States v. Realty Multi-List, Inc.*,
    No. 76-cv-87, 1978 U.S. Dist. LEXIS 18026 (M.D. Ga. May 1, 1978) ...................................2

*Witches Brew Tours LLC v. New Orleans Archdiocesan Cemeteries*,
    No. 21-cv-2051, 2022 U.S. Dist. LEXIS 149827 (E.D. La. Aug. 22, 2022)...........................3

## STATUTES AND RULES

42 U.S.C. § 3604...................................................................7

La. Stat. Ann. § 51:122 ...................................................................6

Sherman Act (15 U.S.C. § 1) ...................................................................2, 3, 6, 10

## I.     INTRODUCTION

Plaintiffs' Opposition does not overcome the failure of the Second Amended Complaint ("SAC") to cure the deficiencies this Court identified in dismissing the pleading's prior iteration. Rather than identify specific factual allegations in the SAC that satisfy the elements of their claims, Plaintiffs point to their volume of exhibits, introduce new ineffective theories and facts, and ignore Defendants' arguments.  These tactics fail to rescue a complaint that, at its core, does not state a claim for relief.  Plaintiffs have had three opportunities to plead their claims.  This time, dismissal *with prejudice* is warranted.

## II.     ARGUMENT

### A.     Plaintiffs' Opposition Fails to Justify Their Deficient Antitrust Claims

#### 1.  Plaintiffs' Opposition Does Not Salvage Their Deficient Tying Claim

Plaintiffs' Opposition merely states that MLS access and MLS-linked market infrastructure is the "tying product" and that mandatory association memberships are the "tied products." Dkt. No. 74 ¶¶ 29–30 ("Opp.").  The SAC contains no factual allegations describing the contours of those markets.  Dkt. No. 73 at 12–13 ("MTD").  Nor does the SAC provide any basis to conclude that MLS access and association membership are separate products with independent demand; this is a threshold requirement for a tying claim.  *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 19–21 (1984) (requiring the tying and tied products to be "distinguishable in the eyes of buyers"). Plaintiffs' Opposition does nothing to challenge Defendants' argument that Plaintiffs still patently fail to plead the elements of a tying claim.  MTD at 4–8; *see also* Dkt. No. 62 at 16–22 ("Report").

Plaintiffs' effort to address the authorities cited in Defendants' MTD is equally unavailing. Opp. ¶¶ 32–36.   This Court already cautioned Plaintiffs against relying on *Thompson v. Metropolitan Multi-List, Inc.*, 934 F.2d 1566 (11th Cir. 1991).  Report at 20.  Plaintiffs also ignore this Court's discussion of *Thompson*, *Pope*, and *Realty Multi-List* (*id.* at 18–19), which Plaintiffs

1

inaccurately characterize as involving different "structures" from the three-tier local-state-national model.  Opp. ¶ 34.  But *Thompson* and *Pope* involved REALTOR® organizations operating under the Three-Way Agreement ("TWA") federated governance structure.  *Thompson*, 934 F.2d at 1570; *Pope v. Miss. Real Est. Comm'n*, 872 F.2d 127, 130 (5th Cir. 1989).  And *Realty Multi-List* involved a broker-owned MLS operating under REALTOR® rules.  *United States v. Realty Multi-List, Inc.*, 629 F.2d 1351, 1358 n.15 (5th Cir. 1980); *see also United States v. Realty Multi-List, Inc.*, No. 76-cv-87, 1978 U.S. Dist. LEXIS 18026, at *2–3 (M.D. Ga. May 1, 1978).

Plaintiffs introduce a new theory that the three tiers of REALTOR® association membership are separate "tied products."  Opp. ¶ 30.  Plaintiffs also offer a new allegation that "[c]ompeting MLS systems impose materially similar membership restrictions."  *Id.* ¶ 26.  The Court need not consider facts raised for the first time in an opposition.  *Sol v. City of Dallas*, No. 23-cv-606, 2024 U.S. Dist. LEXIS 32719, at *6 n.3 (N.D. Tex. Feb. 26, 2024).  Plaintiffs ignore Defendants' argument that the tiers are components of a single integrated membership, not distinct products under *Jefferson Parish*.  *See* 466 U.S. at 12; MTD at 4–5.  Through their silence, Plaintiffs have waived this argument.  *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) ("[F]ailure to brief an argument in the district court waives that argument in that court.").  Plaintiffs also try to distinguish *Hardy*, *Zea*, and *Findling* by pointing to the volume of exhibits indiscriminately attached to the SAC.  Opp. ¶ 36.  But sheer volume is a makeweight, not a substitute for substance.  And those cases were dismissed because the facts alleged, even taken as true, did not state an antitrust claim.  The facts alleged in the SAC similarly fail to state a claim.

### 2. Plaintiffs' Opposition Confirms That the SAC Fails to Plead the Fundamental Elements of a Claim Under Section 1 of the Sherman Act

*Antitrust Injury.*  Plaintiffs do not respond to Defendants' argument—based on this Court's prior ruling—that an alleged harm due to membership policies is not antitrust injury.  MTD

at 9 (citing Report at 22 n.114 (cautioning Plaintiffs "not [to] focus on mandatory membership but on the other policies mentioned that are potentially anticompetitive as mandatory membership alone is not a violation of Section 1")). Yet, in defiance of this Court's ruling, Plaintiffs' Opposition again rests antitrust injury on the requirement to purchase membership as a condition of MLS access. Opp. ¶ 41. Plaintiffs also do not explain how this alleged injury causes harm to competition—as opposed to harm only to Plaintiffs themselves—and they have not identified any rule or policy that has actually resulted in their exclusion from any MLS. *See* MTD at 10; SAC ¶ 86 (alleging that some Plaintiffs are current members of Defendants' associations).

Plaintiffs' assertion that they are compelled to "comply with policies restricting their ability to compete, including rules that plaintiffs consider to put them in legal jeopardy" (Opp. ¶ 40) fares no better. Plaintiffs' subjective disagreement with association policies is not antitrust injury. MTD at 10. Nor does recharacterizing the membership requirement as "three separate" purchases (Opp. ¶ 40) alter the analysis; as noted above, the three levels of the REALTOR® association structure are not separate products for tying purposes. Plaintiffs' allegations are reduced to dissatisfaction with the terms of voluntary membership, not injury "of the type the antitrust laws were intended to prevent." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

***Relevant Market.*** This Court identified Plaintiffs' failure to adequately define a relevant market as a basis for dismissal of Plaintiffs' Sherman Act claims. Report at 14. Rather than cure this deficiency, Plaintiffs argue only that the precise bounds of a relevant market may be a "fact-intensive inquiry." Opp. ¶ 49. But dismissal is still appropriate where the relevant market is so insufficiently pleaded as to be implausible. MTD at 12–13; *Witches Brew Tours LLC v. New Orleans Archdiocesan Cemeteries*, No. 21-cv-2051, 2022 U.S. Dist. LEXIS 149827, at *14 & n.55 (E.D. La. Aug. 22, 2022). And while Plaintiffs accurately cite *Pacific Steel Group v. Commercial*

*Metals Co.*, 600 F. Supp. 3d 1056 (N.D. Cal. 2022), for the proposition that they need not plead the relevant market with "precise metes and bounds," *Pacific Steel* acknowledges that a plaintiff must offer sufficient factual allegations for a court to identify whether any party has the power to control prices or exclude competition in that market. *Id.* at 1070. Another case that Plaintiffs cite, *In re Pool Products Distribution Market Antitrust Litigation*, 940 F. Supp. 2d 367 (E.D. La. 2013), acknowledges that dismissal is appropriate where a plaintiff purports to limit a product market to a single brand that competes with potential substitutes or where a plaintiff fails to offer a plausible explanation as to why a market should be limited in a particular way. *Id.* at 378.

Plaintiffs ignore the Fifth Circuit authority and the guidance from this Court explaining that a plaintiff may not gerrymander a geographic market to solely encompass a defendant's area of operation. Report at 13 n.28; MTD at 14; *RX Sols., Inc. v. Caremark, L.L.C.*, 164 F.4th 436, 443 (5th Cir. 2026); *Apani Sw., Inc. v. Coca Cola Enters.*, 300 F.3d 620, 633 (5th Cir. 2002). Nor does Plaintiffs' Opposition explain why the geographic boundaries of a market for MLS listing data should track these associations' territories. That proposed market wholly ignores other potential sources for MLS listings. *See* SAC ¶ 34 (alleging existence of a competitor MLS). Indeed, Plaintiffs offer no principled basis for defining the relevant market to include *these* associations' areas and not neighboring associations (or a subset of these associations) besides that these associations are the ones in which Plaintiffs obtained membership. Finally, to the extent that Plaintiffs seek to rely on *Davis v. Hanna Holdings, Inc.*, 787 F. Supp. 3d 42 (E.D. Pa. 2025) (Opp. ¶ 47), the reliance is misplaced. In *Davis*, the product market was a market for "buyer-agent services" and the MLS rationally correlated to the geographic area where a homebuyer might seek a home. *Id.* at 65–66. Here, the alleged corresponding product market is access to the MLS itself. SAC ¶ 46.

*Conspiracy.* This Court found that Plaintiffs failed to "state specific facts to show that Defendants met and collectively agreed" on a plan to restrain trade. Report at 15–16. Rather than cure this deficiency, Plaintiffs argue that the SAC identifies "coordination mechanisms" supporting a plausible inference of concerted action, citing the TWA, NAR Policy Statement 7.25, and alleged "coordinated enforcement mechanisms." Opp. ¶ 31. But these allegations do not address the deficiencies this Court identified. As such, they do not plausibly suggest a conspiracy.

The TWA is an organizational document that establishes the federated structure of the REALTOR® system. SAC ¶ 60(a). The fact that multiple entities adhere to a common membership framework reflects participation in a voluntary trade association, not an agreement to restrain trade. *See N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 40 (2d Cir. 2018) (holding that "organizational decisions do not inherently constitute § 1 concerted action" because "[not] every action by a trade association is . . . concerted action by the association's members"). Plaintiffs' allegations of "coordinated enforcement" fare no better. Opp. ¶ 31. Plaintiffs refer to "MLS-access restrictions, fines, suspension-related consequences, and office-level compliance pressure" in conclusory terms, without identifying a single instance where any Defendant coordinated with any other Defendant to enforce a policy against any Plaintiff. *Id.*; SAC ¶¶ 101, 110–14. Absent such allegations, the SAC describes nothing more than each association independently administering its own membership rules. Plaintiffs fail to allege that Defendants entered into an agreement with the specific intent to restrain trade. At most, Plaintiffs allege that Defendants belong to the same organizational structure and follow common rules.

### 3. Plaintiffs' Opposition Cites Only Superseded Authority to Support Their Deficient Louisiana Monopolies Act Claim

Plaintiffs cite superseded authority to argue that dismissal of federal antitrust claims does not automatically require dismissal of Plaintiffs' Louisiana Monopolies Act ("LMA") claim. Opp.

¶ 59 (citing *La. Power & Light Co. v. United Gas Pipe Line Co.*, 493 So. 2d 1149 (La. 1986), *superseded by statute*, La. Stat. Ann. § 51:122 (as amended 2003)).  The case Plaintiffs cite was superseded by statute expressly to bring the LMA into alignment with federal antitrust law on conspiracy liability for wholly owned subsidiaries.  *See PCI Int'l Consultants, Inc. v. Flavor & Food Ingredients, Inc.*, No. 11-cv-0762, 2011 U.S. Dist. LEXIS 117224, at *10 n.2 (W.D. La. Sept. 16, 2011).  And, in any event, subsidiary liability is not at issue here.  Plaintiffs' Opposition thus does not meaningfully dispute that the LMA follows federal precedent and relies on federal case law.  MTD at 22; *Felder's Collision Parts, Inc. v. All Star Advert. Agency, Inc.*, 777 F.3d 756, 759 (5th Cir. 2015) (affirming dismissal of claims under Louisiana antitrust law because "[t]he resolution of the federal claims also warranted dismissal of the state law antitrust claims, which depend on a finding of federal antitrust liability").  Plaintiffs cannot use the LMA as a fallback for antitrust theories that fail under the Sherman Act.  Plaintiffs' LMA claim should be dismissed.

## B.    Plaintiffs' Opposition Fails to Save Their Deficient Fair Housing Act Claim

Plaintiffs incorrectly argue that Defendants seek to "impose an evidentiary burden at the pleading stage."  Opp. ¶ 56.  Rather, Defendants merely point out that Plaintiffs, on their third attempt, still fail to plead any required element of a Fair Housing Act ("FHA") claim despite clear explanation from this Court as to what an FHA claim requires.  MTD at 17–19; Report at 25–26.

*First*, Defendants do not argue that Plaintiffs lack standing "because they are not prospective homebuyers."  Opp. ¶ 50.  Defendants argue that Plaintiffs lack standing because they fail to allege that they suffered concrete or particularized injury from a discriminatory practice on a protected class.  MTD at 16.  Plaintiffs cite *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 209 (1972), to argue that they are "aggrieved persons" because "they are compelled to participate in and enforce the challenged policies or face exclusion from essential MLS infrastructure."  Opp. ¶ 50.  *Trafficante* is inapposite because the plaintiffs there were tenants who

6

alleged cognizable injury flowing directly from their apartment complex's racially discriminatory practices on nonwhite tenants.  409 U.S. at 207–08.  Plaintiffs allege no such injury.

*Second*, Plaintiffs' continued failure to identify a protected class is fatal to their FHA claim.  MTD at 17; Report at 27.  Plaintiffs argue that Defendants' policies "contribute to discriminatory housing-market effects."  Opp. ¶ 51.  This Court already explained that such conclusory and unsupported allegations of discriminatory effects are insufficient to state a claim under the FHA.  Report at 25–26 ("Aside from general conclusory allegations . . . Plaintiffs provide no factual support that any of Defendants' policies have disparate impacts on protected groups.").  Instead of curing this deficiency, Plaintiffs now assert that Defendants' policies "may" burden "first-time homebuyers, lower-income purchasers, minority communities, families with children, FHA-financed buyers, [and] VA-financed buyers."  Opp. ¶ 52.  Plaintiffs' effort to improperly expand the purported affected groups beyond what was pleaded in the SAC should not be credited.  *Sol*, 2024 U.S. Dist. LEXIS 32719, at *6 n.3.  More fundamentally, of that list, only familial status is a protected class under the FHA, and it was not pleaded in the SAC.  *See* 42 U.S.C. § 3604 (prohibiting discrimination based on "race, color, religion, sex, familial status, or national origin").

*Third*, this Court expressly identified Plaintiffs' failure to allege a causal connection between a specific policy and a disparate impact on a protected class. Report at 25.  The SAC did not cure this deficiency: the SAC offers no facts or statistical evidence showing the required causal connection.  MTD at 17–18.  Plaintiffs' Opposition also improperly seeks to introduce an "expert opinion."  Opp. ¶ 54 (citing Ex. AA).  Not only is this new evidence unpleaded, but the Court need not accept as true purported legal analysis of unclear provenance.  Even if considered, this "opinion" opines only that certain policies "may" disadvantage "first-time buyers, lower-income households, and families with children."  Opp. ¶ 54.  As noted above, the only protected class in

that list, familial status, is not pleaded in the SAC. Nor does the "opinion" identify any discriminatory policy or establish a causal link to injury suffered *by Plaintiffs*. Having failed to address the very defects this Court identified, Plaintiffs' FHA claim should be dismissed.

**C.     Plaintiffs' Opposition Fails to Aid Their Deficient Breach-of-Contract Claim**

Plaintiffs do not meaningfully address Defendants' arguments that the SAC fails to state a breach-of-contract claim. Opp. ¶¶ 61–62; MTD at 20–21. Plaintiffs seek to supplement the bare allegations in their SAC. Plaintiffs argue that Defendants breached obligations arising from MLS participation agreements and REALTOR® membership agreements by implementing and enforcing policies not required by law, committing possible FHA violations, and disseminating misleading information about Louisiana Act 690. Opp. ¶¶ 61–62. But the SAC still fails to allege which Defendants breached which contractual obligations. MTD at 20. And Plaintiffs do not address Defendants' argument that their allegation that Defendants gave "misleading" information about Louisiana Act 690 is contradicted by their exhibits and lacks the context necessary to assess a breach-of-contract claim. *Id*. at 20–21. This claim should be dismissed.

**D.     Plaintiffs' Opposition Fails to Support Their Deficient Unjust-Enrichment Claim**

Plaintiffs' argument that they pleaded unjust enrichment in the alternative is unavailing. Opp. ¶¶ 64–65. As Defendants explained, Louisiana law forecloses pleading unjust enrichment in the alternative. MTD at 22; *Entergy Gulf States La., L.L.C. v. La. Generating, L.L.C.*, No. 14-cv-385, 2020 U.S. Dist. LEXIS 33644, at *7–10 (M.D. La. Feb. 27, 2020); *Garber v. Badon & Ranier*, 981 So. 2d 92, 100 (La. Ct. App. 2008) ("[I]t is not the success or failure of other causes of action, but rather the *existence* of other causes of action, that determine whether unjust enrichment can be applied."). And Plaintiffs fail to address Defendants' argument that Plaintiffs' receipt of benefits precludes an unjustified "impoverishment" (MTD at 21–22), thus waiving the issue. *JMCB*, 336

8

F. Supp. 3d at 634.  Plaintiffs' unjust-enrichment claim should be dismissed.

### E.    Plaintiffs' Opposition Fails to Bolster Their Deficient Civil-Conspiracy Claim

Contrary to Plaintiffs' argument (Opp. ¶ 66), dismissal of a civil-conspiracy claim on the pleadings is appropriate where a plaintiff fails to plead the prima facie elements or where the supporting allegations are conclusory.  *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 526 (5th Cir. 2016) (affirming dismissal of civil-conspiracy claims under Louisiana law where the plaintiffs failed to allege an agreement "to commit the illegal or tortious act").  Because Plaintiffs fail to state a claim for an antitrust violation, unjust enrichment, or breach of contract, their conspiracy claim necessarily fails because civil conspiracy is a derivative claim that depends on the viability of the predicate unlawful act.  MTD at 23–24.  Plaintiffs try to salvage this claim by listing new unpleaded legal theories—tortious interference, unfair trade practices, and misrepresentation (Opp. ¶ 72)—but Plaintiffs do not plead the elements of those claims.

Plaintiffs do not distinguish *Brown & Root Industrial Services, LLC v. Brown*, No. 21-cv-291, 2024 U.S. Dist. LEXIS 195766 (M.D. La. Oct. 28, 2024) (Opp. ¶ 68), because Plaintiffs' voluminous, scattershot exhibits do not cure their failure to allege facts supporting the elements of civil conspiracy.  The exhibits Plaintiffs cite—the TWA, NAR Policy Statement 7.25, and Exhibit M concerning Louisiana Act 690—describe standard association governance documents, not evidence of an agreement to commit an unlawful act.  Opp. ¶ 67; *see supra* § II.A.2.

Plaintiffs omit the final element of a civil-conspiracy claim: an agreement as to the intended outcome or result.  Opp. ¶ 66.  Plaintiffs' allegations that Defendants' actions "were undertaken for the purpose of restraining competition, coercing compliance, excluding or burdening non-conforming professionals" are unsupported and fail to plausibly allege an agreement as to the intended outcome.  SAC at 98.  Administering membership rules, enforcing compliance, and operating an MLS—even if Plaintiffs disagree with the policies—does not evidence an agreement

9

to commit an unlawful act.  Plaintiffs' civil-conspiracy claim should be dismissed.

**F.      Plaintiffs' Opposition Confirms the Absence of Any Basis for Individual Liability Against Mr. Damann**

Plaintiffs argue that Mr. Damann "personally participated" in the challenged conduct making him liable under unspecified "Louisiana law."  Opp. ¶ 73.  But Louisiana law limits personal liability of a corporate officer except in cases of fraud or intentional interference with contract.  *Matthews v. BancorpSouth Bank*, No. 09-cv-910, 2010 U.S. Dist. LEXIS 17717, at *16 (M.D. La. Jan. 25, 2010).  Plaintiffs bring neither claim.  And a corporate officer is only liable for an antitrust conspiracy under the Sherman Act where the officer has a "direct role in the conspiracy" and the complaint alleges "conscious wrongdoing by that officer."  *MVConnect, LLC v. Recovery Database Network, Inc.*, No. 10-cv-1948, 2011 U.S. Dist. LEXIS 161409, at *30, 32 (N.D. Tex. May 27, 2011) (dismissing claims against corporate officers with prejudice).  Plaintiffs allege neither.  What the SAC alleges, and the exhibits show, is that Mr. Damann responded to inquiries about association policies, a routine administrative task, not personal participation in the challenged conduct.  Any claim against Mr. Damann should be dismissed.

**G.      Plaintiffs' Opposition Fails to Provide Any Basis for Giving Plaintiffs a Fourth Bite at the Apple**

Plaintiffs have had three opportunities to plead their claims.  MTD at 25.  Plaintiffs protest that dismissal with prejudice is "not warranted."  Opp. at 27.  But Plaintiffs' Opposition casts no doubt on the reality that, despite multiple opportunities, Plaintiffs are unable to state any claim for relief.  MTD at 25; Report at 29.

**III.    CONCLUSION**

For the reasons set forth above, in Defendants' MTD, and previously identified by this Court, Plaintiffs' SAC should be dismissed in its entirety with prejudice.

Dated:  May 26, 2026                                BREAZEALE, SACHSE & WILSON, L.L.P.

<u>s/ Claude F. Reynaud, Jr.</u>
Claude F. Reynaud, Jr., La. Bar Roll 11197
Jeanne C. Comeaux, La. Bar Roll 22999
Eric B. Landry, La. Bar Roll 30587
301 Main Street, 23rd Floor (70801)
Post Office Box 3197
Baton Rouge, LA 70821-3197
Telephone: (225) 387-4000
Fax: (225) 381-8029
Claude.Reynaud@bswllp.com
Jeanne.Comeaux@bswllp.com
Eric.Landry@bswllp.com

*Attorneys for Defendants Greater Baton Rouge Association of REALTORS®, Inc., New Orleans Metropolitan Association of REALTORS®, Inc., Bayou Board of REALTORS®, Inc., Greater Central Louisiana REALTORS® Association, Inc., REALTOR® Association of Acadiana, Louisiana REALTORS®, ROAM MLS, LLC, National Association of REALTORS®, and Kenneth Damann*

11

**CERTIFICATE OF SERVICE**

I certify that on May 26, 2026, I electronically filed the foregoing with the Clerk of the

Court using the ECF system, which sends notification of such filing to all email addresses listed

with the Court's electronic filing system.  Notice will be mailed to the following parties, who are

not participating in the Court's CM/ECF system:

Tammy Jo Williams
30792 Walker Road North
Walker, LA 70785

Darlene Currie
3431 Allene Street
Brusly, LA 70719

Carlos Alvarez
10202 Perkins Rowe
Suite E-160
Baton Rouge, LA 70810

*s/ Jeanne C. Comeaux*
Jeanne C. Comeaux